IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

ANN C. HURLEY (D.C. Bar No. 375676)
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Phone: (415) 744-6480
Fax: (415) 744-6476
email: ann.hurley@usdoj.gov

Attorneys for Plaintiff United States of America

EDMUND G. BROWN JR., Attorney General
of the State of California
MARY HACKENBRACHT
Senior Assistant Attorney General
DANIEL S. HARRIS (State Bar No. 157433)
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-3664
Phone: (415)703-5530
Fax: (415)703-5480
email: Daniel.Harris@doj.ca.gov

Attorneys for Plaintiff People of the State of California
ex rel. the California Department of Fish and Game

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the PEOPLE OF THE STATE OF CALIFORNIA ex rel. the CALIFORNIA DEPARTMENT OF FISH AND GAME,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CHEVRON U.S.A. INC.,<br><br>　　　　　Defendant. | Civil No. C 10-00375 JSW<br><br>**CONSENT DECREE** |

A.   Plaintiffs, the United States of America ("United States"), on behalf of the

U.S. et al. v. Chevron U.S.A. Inc.　　　　　　　　　　　　　　　　　　　　Consent Decree

National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce and the U.S. Department of the Interior ("DOI"), U.S. Fish and Wildlife Service ("USFWS"), and the People of the State of California ("State") ex rel. California Department of Fish and Game ("CDFG") are concurrently filing a complaint alleging that Defendant Chevron U.S.A. Inc. is liable for civil claims for Natural Resource Damages arising from releases of Oil and Hazardous Substances into Castro Cove, a small embayment within San Pablo Bay located adjacent to an industrial area that is the location of facilities, including a petroleum refinery, owned and operated by Defendant in Richmond, California (the "Refinery").

B.  Plaintiffs allege that there have been releases of Oil and Hazardous Substances, including mercury and polycyclic aromatic hydrocarbons ("PAHs") from the Refinery to Castro Cove, including through an historical discharge of wastewater to the south side of Castro Cove. Lead, which is a hazardous substance, was also released to the environment through lead pellets deposited in a portion of the Castro Cove sediments from past skeet shooting activities at the Refinery.

C.  NOAA, USFWS, and CDFG are the federal and State of California trustee agencies (collectively, the "Trustees") for the Natural Resources injured by the releases of Oil and Hazardous Substances into Castro Cove. As a designated Trustee, each agency is authorized to act on behalf of the public to assess injuries to those Natural Resources under its trusteeship resulting from the releases of Oil and Hazardous Substances to the environment and to recover damages to make the environment and the public whole.

D.  The Defendant and the Trustees have cooperated in assessing the Natural Resource Damages arising from the release of Oil and Hazardous Substances into Castro Cove, and the Trustees undertook a restoration planning process to determine the restoration projects that would most effectively restore or compensate for the loss of use and injury to Natural Resources resulting from the alleged releases of Oil and Hazardous Substances to the environment.

E.  The Plaintiffs and the Defendant (collectively, "the Parties") have consented to the entry of this Consent Decree without trial of any issues, and the Plaintiffs and the Defendant

hereby stipulate to the Court that in order to resolve the issues stated in the Complaint, this Consent Decree should be entered. The Plaintiffs and the Defendant assert, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated in good faith, and that the Consent Decree is fair, reasonable, and in the public interest, and consistent with the purposes of the federal and state statutes pursuant to which this claim is brought.

NOW THEREFORE, it is ORDERED AND DECREED as follows:

## I. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, 33 U.S.C. § 1321(n), and 42 U.S.C. § 9613(b).

2. This Court also has personal jurisdiction over the Defendant. Solely for the purpose of this Consent Decree and the underlying Complaint, Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## II. PARTIES BOUND

3. This Consent Decree applies to and is binding upon Plaintiffs and upon Defendant and its successors and assigns. Except as expressly provided in this Consent Decree, nothing herein is intended or shall be construed to impose any duties upon or waive any rights of any agency, division, subdivision or other governmental entity of the State of California including, but not limited to, the California Attorney General, other than the State ex rel. CDFG. Any change in ownership or corporate status of a Party shall in no way alter that Party's responsibilities under this Consent Decree. Each signatory to this Consent Decree certifies that she or he is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the parties to it.

## III. OBJECTIVES

4. The Parties to this Consent Decree agree that settlement of this action without further litigation is in the public interest and that entry of the Consent Decree is the most appropriate means of resolving this action.

5. The Defendant does not admit any of the allegations contained in the Complaint, and neither the Defendant's participation in this Consent Decree nor any provision herein shall be construed as an admission of liability for any purpose.

## IV. DEFINITIONS

6. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, or in related regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or such regulations. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply.

"Castro Cove" or "Cove" shall mean that embayment located in San Pablo Bay within Contra Costa County, California, immediately north of the Chevron North Yard Impound Basin and enclosed by a line drawn from the Point San Pablo Yacht Harbor to the West Contra Costa Sanitary Landfill.

"Castro Cove Contamination" shall mean the contamination of the sediments of Castro Cove by Oil and Hazardous Substances that existed on or before the date of lodging of this Consent Decree.

"Damage Assessment Costs" shall mean all costs associated with the planning, design, implementation and oversight of the Trustees' damage assessment process which addresses the extent and quantification of the injury to, destruction of, or loss of Natural Resources and the services provided by these Natural Resources resulting from the Castro Cove Contamination, and with the planning of restoration or replacement of such Natural Resources and the services provided by those Natural Resources, and any other costs necessary to carry out the Trustees' responsibilities with respect to those Natural Resources injured as a result of the Castro Cove Contamination.

"Defendant" shall mean Chevron U.S.A. Inc..

"Natural Resource Damages" shall mean all past and future damages, including loss of use, restoration or rehabilitation costs, costs of resource replacement, or acquisition of equivalent resources, or any other losses of resource services or values and Damage Assessment Costs

arising from or relating to injury to, destruction of, or loss of Natural Resources resulting from the Castro Cove Contamination. "Natural Resource Damages" shall not include future "remedial action" or "response" as those terms are defined in Section 101(24 and 25) of CERCLA, 42 U.S.C. § 9601(24 and 25).

"Natural Resources" shall have that meaning set forth in Section 101(16) of CERCLA, 42 U.S.C. § 9601(16).

"Oil and Hazardous Substances" shall mean any hazardous substances, contaminants and pollutants, including but not limited to petroleum, petroleum constituents, including xylene, toluene, benzene, and PAHs, and metals, including lead.

## V. SETTLEMENT PAYMENTS

7. Within forty-five (45) days after this Consent Decree has been lodged by Plaintiffs with this Court, Defendant shall deposit the amount of two million, eight hundred fifty thousand dollars ($2,850,000) into an account bearing interest on commercially reasonable terms in a federally-chartered bank (hereinafter, the "Castro Cove Escrow Account"). If the Consent Decree is not entered by this Court and the time for any appeal of that decision has run, or if this Court's denial of entry of this Consent Decree is upheld on appeal, the monies placed in the Castro Cove Escrow Account, together with accrued interest thereon, shall be returned to Defendant. If the Consent Decree is entered by this Court, Defendant shall, within fifteen (15) business days of the Effective Date of this Consent Decree, cause the sum of $2,850,000, plus all accrued interest thereon, to be paid to DOI, on behalf of the Trustees, for the purposes set forth in Section VII (TRUSTEE-SELECTED NATURAL RESOURCE RESTORATION PROJECTS). Such payment shall be made by Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with the instructions that the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California shall provide to Defendant following entry of the Consent Decree by this Court. Defendant shall send a transmittal letter, indicating that the EFT has occurred, to the Parties in accordance with Section XI (NOTICES) and to:

Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attention: Restoration Fund Manager

1849 C Street, N.W., Mail Stop 4449
Washington, D.C. 20240

The EFT and transmittal letter shall reflect that the payment is being made to the "Natural Resources Damage Assessment and Restoration Fund, Account No. 14X5198 - Chevron/Castro Cove Richmond Refinery. DOI will assign these funds a special project number to allow the funds to be maintained as a segregated account within the Department of Interior Natural Resource Damage Assessment and Restoration Fund, Account No. 14X5198 (the "Chevron Castro Cove NRD Account").

    8.    In addition to the payments made by Defendant pursuant to Paragraph 7 of this Consent Decree, DOI, NOAA, and CDFG shall be paid by Defendant for their unreimbursed Natural Resource Damage Assessment Costs resulting from the Castro Cove Contamination that they have incurred through the Effective Date of the Consent Decree ("New Costs") if the invoices and supporting documentation for such New Costs are submitted to Defendant within ninety (90) days following the Effective Date of this Consent Decree. Defendant shall pay such New Costs (except any amounts which it contests in accordance with Paragraph 8(a)) within sixty (60) days of the receipt of each invoice and its supporting documentation in accordance with the payment instructions to be provided by DOI, NOAA and CDFG.

    a.    Defendant may object to payment of any New Costs if it contends that DOI, NOAA, or CDFG has made an accounting error or if it alleges that a cost item that is included represents a cost that is not a Damage Assessment Cost. Such objection shall be made in writing within sixty (60) days of receipt of the invoice and must be sent to DOI (if DOI's New Costs are being disputed), to NOAA (if NOAA's New Costs are being disputed) or to CDFG (if CDFG's New Costs are being disputed) pursuant to Section XI (NOTICES). Any such objection shall specifically identify the contested New Costs and the basis for the objection.

    b.    If Defendant objects to any New Costs, such objection shall be, in the first instance, the subject of informal negotiations between DOI, NOAA, or CDFG and Defendant. Such period of informal negotiations shall not extend beyond twenty (20) days after the date that written notice of an objection to New Costs is sent to either DOI, NOAA, or CDFG, unless

otherwise agreed to in writing by the Parties. If informal negotiations do not result in resolution of the objection, Defendant shall pay the New Costs that were subject to the objection within thirty (30) days of the conclusion of the informal negotiations, unless the Defendant exercises its right to petition the Court in accordance with this Paragraph. Defendant may petition the Court within thirty (30) days of the end of the informal negotiation period for resolution of the objection. Further briefing and argument on the petition will comply with the requirements of the Court.

## VI. STIPULATED PENALTIES

9. If Defendant fails to cause any payment to be made when due as required by Paragraph 7 above, Defendant shall pay to the United States and to the State a stipulated penalty of $1,000 per day for each day that such payment is late. Such stipulated penalties shall be paid half to the United States and half to the State.

10. If Defendant fails to cause any payment to be made when due as required by paragraph 8 above, Defendant shall pay to the United States (if payment was due to the United States) or to the State (if payment was due to the State) a stipulated penalty of $500 per day for each day that such payment is late.

11. Any stipulated penalties, as described above, owing to the United States shall be due within thirty (30) days of receipt by Defendant of a written demand, and shall be paid by EFT in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California. Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Consent Decree and shall reference DOJ No. 90-11-3-09726 and the case name and number.

12. Any stipulated penalties, as described above, owing to the State shall be due within thirty (30) days of receipt by Defendant of a written demand and shall be paid by trust check, certified check, or money order payable to the California Department of Fish and Game. Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Consent Decree and shall

reference the Castro Cove Contamination, the case name and number, and reflect that it is a payment to the Fish and Wildlife Pollution Account. The check or money order shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn: Katherine Verrue-Slater, Staff Counsel III
> 1700 K Street, Suite 250
> Sacramento, California 95811

13. Defendant shall not deduct any stipulated penalties paid under this Section in calculating its federal or state income taxes.

14. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment becomes due.

15. The Parties agree that the stipulated penalties set forth in this Section VI are reasonable under the circumstances and are valid for purposes of California Civil Code sections 1671 and 3389.

### VII. TRUSTEE-SELECTED NATURAL RESOURCE RESTORATION PROJECTS

16. **Management and Application of Funds.** DOI shall, in accordance with law, manage and invest those funds paid pursuant to Paragraph 7 of this Consent Decree to the Chevron Castro Cove NRD Account and any return on investments or interest accrued on the Chevron Castro Cove NRD Account for the joint use by the Trustees in connection with restoration, rehabilitation or replacement of Natural Resources affected by the Castro Cove Contamination. DOI shall not make any charge against the Chevron Castro Cove NRD Account for any investment or management services provided. DOI shall hold such funds in the Chevron Castro Cove NRD Account, including return on investments or accrued interest, subject to the provisions of this Consent Decree.

17. The Trustees will expend the funds described in Paragraph 16 for the design, implementation, permitting (as necessary), monitoring, and oversight of restoration projects that improve the ecological function of habitats in San Pablo Bay that at present are not fully

1  functional and that are the same or similar to the intertidal mudflat, salt marsh, and shallow
2  subtidal habitat that was injured in Castro Cove and for the costs to conduct a restoration
3  planning and implementation process.

4    18. The Trustees' allocation of funds for specific projects is contained in a
5  Restoration Plan jointly prepared by the Trustees, for which public notice, opportunity for public
6  input, and consideration of public comment has been provided, in accordance with the
7  requirements of the law. The Trustees jointly retain the ultimate authority and responsibility to
8  use the funds in the Chevron Castro Cove NRD Account to restore, rehabilitate or replace
9  Natural Resources in accordance with applicable law, this Consent Decree, the Restoration Plan
10 and any Memorandum of Understanding among them. Defendant shall not be entitled to dispute,
11 in any other forum or proceeding, any decision relating to the use of funds or restoration efforts
12 under this Section, and the rights and protections afforded to Defendant under the covenant not to
13 sue and contribution protection provisions in Sections VIII (COVENANTS NOT TO SUE BY
14 PLAINTIFFS) AND X (EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION)
15 shall not be affected in any way by the Trustees' use or administration of such funds.

## VIII. COVENANTS NOT TO SUE BY PLAINTIFFS

17    19. In consideration of the payments that will be made by Defendant, and except as
18 specifically provided in Paragraph 21 (Reservation of Rights) of this Section, the Plaintiffs
19 covenant not to sue or to take administrative action against Defendant pursuant to the
20 Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §
21 9607(a)(4)(C) and (f), the Clean Water Act, 33 U.S.C. § 1321(f)(4), California Fish and Game
22 Code §§ 2014 and 12016, or any other applicable law, or commence any other judicial or
23 administrative action, to recover Natural Resource Damages arising from the Castro Cove
24 Contamination. Notwithstanding the terms of the preceding sentence, nothing in this Paragraph
25 is intended to preclude or limit the United States or the State of California from taking response
26 actions or exercising authorities that may be available to them under CERCLA, the Clean Water
27 Act, the California Porter Cologne Water Quality Control Act, or other applicable statutory or
28 common law to seek relief other than Natural Resource Damages, including, but not limited to,

permitting and enforcement under the National Pollutant Discharge Elimination System program, adoption and implementation of TMDLs, issuance of cleanup or abatement orders, waste discharge requirements, and water quality certifications. These covenants not to sue shall take effect upon the Effective Date of this Consent Decree. However, they are conditioned upon Defendant's satisfactory performance of its obligations under this Consent Decree.

20. The covenant not to sue in Paragraph 19 extends only to Defendant: <u>provided, however,</u> that this covenant not to sue (and the reservations thereto) shall also apply to : (i) Chevron Corporation, Chevron Oronite Company LLC, Chevron Environmental Management Company, and successors and assigns of each of them and the Defendant, but only to the extent that the alleged liability of Chevron Corporation, Chevron Oronite Company LLC, Chevron Environmental Management Company or the successor or assign of each of them or the Defendant is based on the alleged facts supporting the alleged liability of the Defendant; and (ii) the officers, directors, and employees of Chevron Corporation, Chevron Oronite Company LLC, Chevron Environmental Management Company and the Defendant and the successors or assigns of each of them, but only to the extent that the alleged liability of the officer, director or employee is based on said person's status as an officer, director or employee of that entity.

21. <u>Reservation of Rights</u>

a. Notwithstanding any other provision of this Consent Decree, the Plaintiffs reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action seeking recovery of Natural Resource Damages: (i) based on injury to, destruction of, or loss of Natural Resources as a result of the Castro Cove Contamination which resulted from conditions that were unknown to the Trustees as of the date of lodging of this Consent Decree, or could not have been reasonably ascertained by the Trustees from information known to the Trustees as of the date of lodging of this Consent Decree; or (ii) based on information received by the Trustees after the date of lodging of this Consent Decree which indicates that there was injury to, destruction of, or loss of Natural Resources as a result of the Castro Cove Contamination which was of a type different than or magnitude significantly larger than that known to the Trustees as of said date.

  b. The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 19. The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following: (i) claims based on a failure by Defendant to meet a requirement of this Consent Decree; (ii) liability for response costs or the performance of response actions or other cleanup activity necessitated by the Castro Cove Contamination pursuant to CERCLA, the Clean Water Act, the Bay Protection and Toxic Cleanup program (California Water Code §§ 13390 *et seq.*), or any other applicable law; (iii) civil penalties imposed under the Clean Water Act, California Water Code § 13385, or any other applicable law; and (iv) criminal liability.

## IX. COVENANT NOT TO SUE BY DEFENDANT

22. Subject to Paragraph 24 below, the Defendant hereby covenants not to sue or assert any administrative claims or causes of action against the Plaintiffs with respect to this Consent Decree or with respect to Natural Resource Damages resulting from the Castro Cove Contamination, including but not limited to:

  a. Any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

  b. Any claim against Plaintiffs, including any department, agency or instrumentality of the United States or the State, under CERCLA Sections 107 or 113, 42 U.S.C. §§ 9607 and 9613, relating to Natural Resource Damages resulting from the Castro Cove Contamination; and

  c. Any claims under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law relating to Natural Resource Damages resulting from the Castro Cove Contamination.

23. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or

40 C.F.R. 300.700(d).

24. The Defendant reserves its right to contest any claim allowed by Section VIII (COVENANTS NOT TO SUE BY PLAINTIFFS) of this Consent Decree, and the Defendant does not by consenting to this Consent Decree waive any other rights or defenses with respect to such claims, including the right to assert counterclaims, except that the Defendant covenants not to assert, and may not maintain, any defense based upon principles of waiver, res judicata, collateral estoppel, claim preclusion, issue preclusion, claim-splitting, or other defense based upon the contention that the claims that are allowed by Section VIII of this Consent Decree were or should have been brought in the instant case.

## X. EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

25. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have against any person not a Party hereto.

26. The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the Defendant, and the other persons and entities included under the Covenant Not to Sue in Paragraph 19 of this Consent Decree, are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Natural Resource Damages, as that term is defined in Paragraph 6 of this Consent Decree.

27. The Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

28. The Defendant shall, with respect to any suit or claim brought against it for

matters related to this Consent Decree, notify in writing the United States and the State within 10 days of service of the complaint on Defendant. In addition, Defendant shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

## XI. **NOTICES**

29. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
Box 7611 Ben Franklin Station
Washington, DC 20044-7611
Re: DOJ No. 90-11-3-09726

To DOI

Charles McKinley
Assistant Field Solicitor
1111 Jackson Street
Suite 735
Oakland, California 94607

To NOAA

Christopher Plaisted
NOAA-GCNR
501 W. Ocean Blvd., Suite 4470
Long Beach, California 90802

To the State

Daniel S. Harris
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-3664

To CDFG

Katherine Verrue-Slater
Staff Counsel III
Department of Fish and Game
Office of Spill Prevention and Response
1700 K Street, Suite 250
Sacramento, California 95811

To Defendant

Timothy R. Knutson
Senior Counsel
Chevron U.S.A. Inc.
Law Department
6111 Bolinger Canyon Road
BR1-Y RM 4214
San Ramon, California

Gerald F. George
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, California 94105

30. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

31. Notices submitted pursuant to this Section shall be deemed submitted upon mailing unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII. EFFECTIVE DATE

32. The Effective Date of this Consent Decree shall be the date of the entry of this Consent Decree by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket. Provided, however, that if the Court permits a third party to intervene in this matter and that third party challenges this Consent Decree, the Effective Date shall mean (1) the date after entry of this Consent Decree on which all applicable appeal periods have expired without an appeal being filed, or (2) if an appeal is taken after entry, the date on which the District Court's judgment is affirmed and there is no further right to appellate review.

## XIII. RETENTION OF JURISDICTION

33. The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of effectuating or enforcing compliance with the terms of this Consent Decree.

## XIV. RETENTION OF RECORDS

34. Until three years after termination of this Consent Decree pursuant to Section XX

1  (TERMINATION), the Defendant shall retain, and shall instruct its contractors and agents to
2  preserve, all non-identical copies of all documents, records, or other information (including
3  documents, records, or other information in electronic form) in their or their contractors' or
4  agents' possession or control, or that come into it or its contractors' or agents' possession or
5  control, that relate in any manner to the Castro Cove Contamination and/or the Natural Resource
6  Damages. At any time during this information-retention period, upon request by the Plaintiffs,
7  Defendant shall promptly provide copies of any documents, records, or other information
8  required to be maintained under this Paragraph.

9      35. At the conclusion of the information-retention period provided in the preceding
10 Paragraph, Defendant shall notify the Plaintiffs in writing that it will, upon written request by
11 NOAA, DOI or CDFG, deliver any such documents, records, or other information to the
12 requesting agency. Defendant may assert that certain documents, records, or other information is
13 privileged under state or federal law. If Defendant asserts any such privilege, it shall provide
14 Plaintiffs with a privilege log relating to the subject documents, records or other information.
15 Defendant shall retain the documents, records or other information that are withheld as privileged
16 until any privilege disputes relating to those documents are resolved. Except as provided in this
17 Paragraph with respect to assertedly privileged documents, records or other information, at any
18 time after ninety days of such written notification, Defendant may, subject to its obligations
19 under Paragraph 36, destroy or otherwise dispose of such documents without further obligation
20 to provide notice to NOAA, DOI or CDFG.

21     36. This Consent Decree in no way limits or affects any right to obtain information
22 held by the United States or the State pursuant to applicable federal or state laws, regulations, or
23 permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents,
24 records, or other information imposed by applicable federal or state laws, regulations or permits.

25                        **XV. MODIFICATION**

26     37. The terms of this Consent Decree may be modified only by a subsequent written
27 agreement signed by the Parties or as ordered by the Court upon the noticed motion of any Party.
28 Where any modification constitutes a material change to any terms of this Consent Decree, it

shall be effective only upon approval by the Court.

## XVI. PUBLIC NOTICE

38. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The Plaintiffs reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the Plaintiffs have notified Defendant in writing that they no longer support entry of the Consent Decree.

## XVII. SIGNATORIES/SERVICE

39. This Consent Decree may be signed in counterparts, and facsimile, photocopy or PDF signatures shall be deemed the same as original signatures. The validity of this Consent Decree shall not be challenged on the basis of counterparts or non-original signatures..

40. With regard to matters relating to this Consent Decree and its enforcement and the filing of the Complaint, Defendant shall identify on the attached signature page the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that entity with respect to all matters arising under or relating to this Consent Decree and the filing of the Complaint. Defendant agrees to accept service of process by mail with respect to all matters arising or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XVIII. COSTS OF SUIT

41. The Parties shall bear their own costs of this action, including attorneys' fees, except that the Plaintiffs shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree.

## XIX. INTEGRATION

42. This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the matters addressed in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any other representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XX. TERMINATION

43.  This Consent Decree shall terminate upon granting of a motion duly filed by the Defendant, demonstrating that Defendant has satisfactorily completed the payments required by Section V (SETTLEMENT PAYMENTS) and payment of any outstanding stipulated penalties or interest under Section VI (STIPULATED PENALTIES). The provisions and effect of Section II (PARTIES BOUND), Section VIII (COVENANTS NOT TO SUE BY PLAINTIFFS), Section IX (COVENANT NOT TO SUE BY DEFENDANT), Section X (EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION) and Section XIV (RETENTION OF RECORDS) shall survive termination of the Consent Decree.

## XXI. FINAL JUDGMENT

44.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties and matters addressed herein.

SO ORDERED

Dated and entered this __13th__ day of __May__, 20__10__

_____
United States District Judge

We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and Comment provisions of Section XVI of this Consent Decree:

FOR THE UNITED STATES:

DATED: 1/11/10

*Ignacia S. Moreno*
IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

DATED: 1/13/10

ANN C. HURLEY
Trial Attorney
Environmental Enforcement Section
United States Department of Justice

We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and Comment provisions of Section XVI of this Consent Decree:

FOR THE PEOPLE OF THE STATE OF CALIFORNIA EX REL. THE CALIFORNIA DEPARTMENT OF FISH AND GAME

DATED: Dec 14, 2009

STEPHEN L. EDINGER
Administrator
Office of Spill Prevention and Response
California Department of Fish and Game

1  We hereby consent to Entry of the foregoing Consent Decree:

2

3  FOR SETTLING DEFENDANT:

4

5  DATED: 15 JAN 2010

   Assistant Secretary
   Chevron U.S.A. Inc.

11  Name and Address of Agent for service of process:

12  Corporation Service Company (CSC)
    2730 Gateway Oaks Drive, Suite 100
13  Sacramento, CA 95833
    (800) 222-2122